CARLIE CHRISTENSEN, Acting United States Attorney (No. 0633)
SCOTT J THORLEY, Assistant United States Attorney (No. 3248)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682
Email: Scott.Thorley@usdoj.gov



---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA,         : <br><br> Plaintiff,      : <br><br> v.      : <br><br> RONALD D. FISHER,      : <br><br> Defendant.      : <br><br> : <br><br> : | Case: 2:10-cr-00285 <br> Assigned To : Campbell, Tena <br> Assign. Date : 4/8/2010 <br> Description: USA v. <br><br> I N D I C T M E N T <br><br> VIO. 18 U.S.C. § 1014 (False Statements to a Financial Institution); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 2314 (Interstate Transportation of Persons in Execution of Fraud); and 49 U.S.C. § 46306(b)(7) (Serving as Airman Without Airman's Certificate) |

---

The Grand Jury charges:

### BACKGROUND

At all times relevant to this Indictment:

**Defendant and His Entities**

1.      From approximately 1995 to June, 1997, defendant FISHER was a resident of

Utah County. From June 6, 1997 through October 26, 2006, defendant RONALD D. FISHER

(FISHER) was in the custody of the United States Marshal's Service and the United States

Bureau of Prisons. From approximately October 27, 2006 through approximately April 2009,

defendant FISHER was a resident of Utah County, Utah, and asserted to others that he made his

living in the aviation refurbishing, brokering and chartering businesses.

2.      Defendant FISHER operated and borrowed funds through two business names,

Fisher Aviation Services, LLC (Fisher Aviation) and Bluebird Holdings, LLC (Bluebird

Holdings).

**Scheme Victims:**

**The Financial Institution Victims**

3.      Washington Mutual Bank (WaMu), CitiMortgage, a wholly owned subsidiary of

CitiBank (CitiMortgage), and Far West Bank (Far West Bank) were financial institutions, the

accounts of which were insured by the Federal Deposit Insurance Corporation (FDIC). Nebo

Credit Union (Nebo) was a financial institution, the accounts of which were insured by the

National Credit Union Administration Board (NCUA).

**The Private Lender Victims**

4.      W.B. was a resident of Utah County, Utah, and was engaged in lending businesses

under the names Avanti Capital, LLC (Avanti) and Highland Residential LLC (Highland

Residential). G.B. was a resident of Utah County, Utah, did business in the residential building

industry under the name Foxfire Properties, Inc. (Foxfire), and he sometimes lent money to a

buyer to facilitate the sale of one of his residential construction projects.

2

**The Private Investor Victims**

5.      C.A. was a resident of Utah County, Utah, and operated a business under the name

Ricks Martindale LLC (Ricks Martindale).  C.AB. was solicited by defendant FISHER to make

investments in the purchase and operation of an aircraft.  M.B. was a resident of Utah County,

Utah, and did lending and investment business under the names Bingham Family Alaska Trust,

LLC (Bingham Family Trust), and Blue Diamond Capital, LLC (Blue Diamond).  M.B., through

the Bingham Family Trust, was also solicited by defendant FISHER to invest in the purchase and

resale of aircraft.

**The Mortgage Loan Application, Approval, and Funding Process**

6.      As part of the lending  application process, lenders WaMu, CitiMortgage and

Nebo (collectively the "Financial Institution Lenders") required a loan application, along with

supporting documentation, which accurately reflected a borrower's financial condition, assets,

income, liabilities, and ability to repay and retire the loan, as well as information concerning the

condition of the property serving as security for the loan.  The information underlying the loan

application was required to be truthful and accurate.  The Financial Institution Lenders required

the foregoing information in order to make knowledgeable and informed lending decisions.  This

phase of the loan verification process, during which an assessment of the risk of granting a loan

against the possibility of a borrower default, is called "underwriting."

7.      At mortgage loan closings, the closing agent was required to prepare a Settlement

Statement ("Form HUD 1") which accurately reflected the receipt and disbursement of

transaction funds.  The Form HUD 1 also detailed, among other things, the down payment paid

by the borrower and funds due to the seller.  Based on the closing instructions, the closing agent

was charged with verifying the legitimate source of the down payment, collecting the indicated

funds from the borrower and, following execution by the borrower and seller of appropriate legal

documents, disbursing the loan proceeds for the benefit of the seller.

## THE SCHEME AND ARTIFICE TO DEFRAUD

8.      Beginning sometime during October 2006 and continuing into April 2009, in the

Central Division of the District of Utah, and elsewhere,

### RONALD D. FISHER,

defendant herein, devised and intended to devise, and did aid and abet others therein, a scheme

and artifice to defraud and to obtain money and property by means of false and fraudulent

pretenses, representations, and promises and omissions of material facts for the purposes of

obtaining investments in aircraft from the Private Investors, and real estate, automobile and

aircraft loans from one or more of the Financial Institution Lenders and the Private Lenders, as

detailed below.  In executing and attempting to execute the scheme and artifice to defraud,

defendant FISHER:

   a.      knowingly transmitted and caused to be transmitted, by means of wire
           communications in interstate commerce, writings, signs, signals, pictures,
           and sounds, in violation of 18 U.S.C. § 1343 (Wire Fraud);

   b.      knowingly made and caused to be made false statements to federally
           insured financial institutions for the purpose of influencing the lending
           decisions of those institutions upon any application for a loan, or change
           to, or extension of, a loan, in violation of 18 U.S.C. § 1014 (False
           Statement to a Financial Institution);

c.  knowingly transported or caused a victim of his scheme to defraud to be transported in interstate commerce of money or property valued at $5,000.00 or more, in execution or concealment of the scheme to defraud, in violation of 18 U.S.C. § 2314 (Interstate Transportation of Persons in Furtherance of Fraud); and

d.  knowingly and willfully served or attempted to serve as an airman without an authorized airman's certificate, in violation of 49 U.S.C. § 46306(b)(7).

## PURPOSE OF THE SCHEME TO DEFRAUD

9.  It was the object of the scheme and artifice to defraud for defendant FISHER to obtain control fraudulently over the moneys and funds of the Financial Institution Victims by means of material misrepresentations, deception, omissions of material facts, and promises about the defendant's business history and experience, the extent of his assets and income, and the defendant's ability to repay loans made to the defendant or his companies by the Financial Institutions and Private Lenders. Once the Defendant induced the Financial Institutions and Private Lenders to lend him money, the Defendant thereafter used those loan funds in building the appearance of a larger net worth in order to induce further lending or investment by other Financial Institutions, Private Lenders or Private Investors.

## MANNER AND MEANS OF THE OF THE SCHEME AND ARTIFICE TO DEFRAUD

10.  It was a part of the scheme and artifice to defraud that defendant FISHER began the process of building the false appearance of wealth and means by approaching G.B., the owner of an expensive, new-construction home in Pleasant Grove Utah, misrepresenting his employment, his employment history, his net worth and income, and offering to buy the home at a purchase price between approximately $1,500,000 and $1,750,000. Defendant FISHER thereafter requested a loan from G.B. in order to fund his business activities.

5

11.     It was further a part of the scheme and artifice to defraud that defendant FISHER approached Nebo and through misrepresentations of his employment, the nature of his business, his income and his business balance, obtained two loans from Nebo to acquire expensive automobiles.  Defendant Fisher later exhibited these automobiles when he made future appeals or pitches to lenders and investors.

12.     It was further a part of the scheme and artifice to defraud that through misrepresentations regarding business, income, net worth, and fabrication of a down payment, defendant FISHER obtained a loan from CitiMortgage in the amount of approximately $1,240,000 to purchase the Pleasant Grove home.  Defendant FISHER thereafter included the Pleasant Grove Home in his net worth and income misrepresentations regarding ability to repay additional loans and investments.

13.     It was further a part of the scheme and artifice to defraud that while showing the increasing trappings of a wealthy lifestyle, defendant FISHER was able to obtain the trust of those whom he victimized through misrepresentations concerning the success of Fisher Aviation and his other business interests, his employment history, his net worth and his income.  Through these misrepresentations, defendant FISHER created a comfort level with the Financial Institutions, the Private Lenders and the Private Investors by driving several expensive automobiles, claiming to own a fleet of aircraft, and advising the scheme victims of the expensive home he had bought in Pleasant Grove.

14.     It was further a part of the scheme and artifice to defraud that defendant FISHER parlayed similar misrepresentations regarding his business, income and net worth, and his

6

appearance of success into a loan from WaMu in the amount of approximately $1,500,000 to

purchase a condominium in Park City, Utah.  Defendant FISHER thereafter included both the

Pleasant Grove Home and the Park City condominium in his net worth and income

misrepresentations regarding ability to repay additional loans and investments.

      15.     It was further a part of the scheme and artifice to defraud that defendant FISHER

continued to approach the Financial Institutions, the Private Lenders and the Private Investors in

order to induce his victims to approve loans or investments for a variety of reasons, including the

purchase of automobiles, real estate, airplanes, or for down payments, bridge loans and short

term business needs.  In doing so, defendant FISHER caused each loan or solicitation for

investment to be based on one or more false and fraudulent material statements or omissions of

material facts:

      a.     that defendant FISHER owned and ran lucrative aviation ventures, including Fisher Aviation which was an active aircraft charter service, and that he was an operator, successful broker, and refurbisher of airplanes and helicopters;

      b.     that defendant FISHER had operated his businesses continuously over many years;

      c.     that defendant FISHER possessed a valid pilot's license that allowed him to pilot whatever aircraft he was then flying, and that he had licenses necessary to pilot and operate charter service aircraft;

      d.     that defendant FISHER had aircraft charter service contracts, sometimes described as prepaid contracts, with groups of physicians, executives or show business personalities, contracts which would cover repayment of loans or investments;

      e.     that defendant FISHER had a profitable resale or rental agreement in place regarding a property or aircraft, and that he only needed a loan or down payment in order to complete a lucrative rental or sale which would create

7

profits for both defendant FISHER and the victim;

f.    that the aircraft, property or automobiles used as collateral for loans were
      free from liens or encumbrances, or that the loan solicited from the victim
      would consummate the transaction and deliver clear title to the collateral;

g.    the true source of the real estate mortgage down payments;

h.    the true financial condition of defendant FISHER and his businesses,
      including their assets, income, cash flow, and deposits;

i.    the authenticity of defendant FISHER's employment history;

j.    the accuracy of tax returns, and personal and business financial statements
      accompanying loan applications;

k.    omission and concealment of the true source of bank account deposits,
      including the fact that the bank account deposits that defendant FISHER
      showed as income in soliciting loans or investments were "air checks," or
      loaned or invested funds, that FISHER moved from account to account to
      create the false appearance of legitimate income;

l.    omission and concealment of the fact that defendant FISHER was a
      convicted felon, had only recently been released from USBOP custody,
      and had not operated his businesses continuously over the stated number
      of years; and

m.    omission and concealment of the fact that the funds attributed to defendant
      FISHER involved in the transaction were borrowed, and that defendant
      FISHER had no financial risk at stake or personal investment in the
      transaction.

16.    It was further a part of the scheme and artifice to defraud that to promote

additional investments or loans, defendant FISHER would fly or arrange flights for potential

Private Lender and Private Investor victims from locations in Utah to locations both inside and

outside of Utah in order to establish and perpetuate a relationship of trust, or to solicit additional

loans.

8

17.     It was further a part of the scheme and artifice to defraud that, as defendant FISHER lacked business operations or funds to pay off the accumulated loans except through additional borrowing or new investments, he continued to solicit from the Private Lender and Private Investor victims additional loans or investments. These solicitations to obtain new investor funds or newly borrowed loan proceeds increased in size and urgency because of the need to pay off old loans or obligations.

18.     It was further a part of the scheme and artifice to defraud that after defendant FISHER repaid loans or investments for a period of time, he ceased making payments on the loans or investments, leaving the victims with unpaid loans or non-performing investments which were unsecured as defendant FISHER had caused the collateral to be pledged multiple times or loans or investments to be secured by properties or collateral worth far less than the outstanding loan balances.  When investors or lenders demanded agreed-upon payments, defendant FISHER cajoled, lulled or even threatened his victims with physical violence.

### COUNTS 1 through 10
### (False Statements to Financial Institutions)

19.     The allegations set forth in paragraphs 1through 18 of this Indictment are incorporated by this reference as if fully set forth herein.

20.     On or about the dates listed below, in the Central Division of the District of Utah,

### RONALD D. FISHER,

the defendant herein, did knowingly make the statements set forth below (generally described above) which the Defendant then well knew to be false and fraudulent in the documents set forth

9

below either by overstating his income and ability to repay loans or by overvaluing his land,

property, and security for the purpose of influencing the action of each of the financial

institutions set forth below, the funds of which were then insured by the Federal Deposit

Insurance Company or the National Credit Union Administration Board, upon an application for

a loan, to wit:

| COUNT | DATE (On Or About) | VICTIM | DOCUMENT | FALSE STATEMENTS |
|---|---|---|---|---|
| 1 | 11/27/06 | Nebo CU | Loan Application Car Loan - $45,000 | 1. Overstated income claiming $10,416 /month. |
| 2 | 12/11/06 | Nebo CU | Loan Application: Car Loan - $90,000 | 1. Overstated income claiming $10,416 /month. 2. Presented payment check that was never cashed. |
| 3 | 03/02/07 | WAMU | Loan Application: Home Equity Loan - $199,800 (funded 3/19/07) | 1. Overstated income claiming $34,000 per month. 2. False statements re employment start date 9/1/1995. |
| 4 | 03/2/07 | Far West Bank | Loan Application: Car Loan - $158,000 | 1. Overstated income claiming $38,901 /month. 2. 2005 draft tax return - claiming $455,087 adjusted gross income for 2005. 3. False statements re: employment, Owner of Fisher Aviation Services LLC, 12 years on the job. |

| COUNT | DATE (On Or About) | VICTIM | DOCUMENT | FALSE STATEMENTS |
|---|---|---|---|---|
| 5 | 03/07/07 | CitiMortgage | Loan Application: Pleasant Grove Home Loan - $1,240,000 | 1. Overstated income claiming $37,000 per month. 2. False statements of Assets (ownership of Aircraft valued at $750,000) 3. CEO Fisher Aviation Services LLC, 17 years on job. 4. Fabrication of down payment. |
| 6 | 03/20/07 | CitiMortgage | Loan Application: Pleasant Grove Home Loan - $1,240,000 | 1. Overstated income claiming $35,000 per month. 2. CEO Fisher Aviation Services LLC, 30 years on job. |
| 7 | 04/04/07 | WAMU | Loan Application: Park City Condo Loan - $1,500,000 | 1. Overstated income claiming $64,375 per month. 2. False statements of net worth $3,556,264 3. False statements re employment, Owner of Fisher Aviation Services LLC, 12 years on the job. 4. Misrepresentation: Source of down payment. |
| 8 | 04/20/07 | WAMU | Loan Application: Park City Condo Refinance w/ cash out - $1,836,250 | 1. False statements of net worth $1,459,318. 2. False statements re employment, Owner of Fisher Aviation Services LLC, 12 years on the job. |
| 9 | 05/21/07 | Nebo CU | Loan Application: Car Loan - $65,000 | 1. Overstated income claiming $10,416 per month. |
| 10 | 07/20/07 | WAMU | Loan Application: HELOC - $500,000 funded 08/18/07 | 1. Overstated income of claiming $100,000 per month 2. Employment start date 09/28/1995. |

Each in violation of 18 U.S.C. §§ 1014 (false statements to a Financial Institution), and

2(b) (causing).

## COUNTS 11 through 17
### (Wire Fraud)

21.     The allegations set forth in paragraphs 1through 18 of this Indictment are

incorporated by this reference as if fully set forth herein.

22.     On or about the dates set forth below, in the Central Division of the District of

Utah and elsewhere, the Defendant,

### RONALD D. FISHER,

for the purpose of obtaining money and property by means of material false and fraudulent

pretenses, representations, and promises, and omissions of material facts, and attempting to do

so, knowingly transmit and cause to be transmitted, by means of wire communications in

interstate commerce, the writings, signs, signals, pictures, and sounds, and did aid and abet,

counsel, command, induce, procure, and cause said wire transmission, to-wit:

| COUNT | DATE (On Or About) | DESCRIPTION OF WIRE COMMUNICATION |
|-------|--------------------|-----------------------------------|
| 11 | 04/10/2007 | Wire of $1,489,599.34 to Frontier Bank (Park City Title) Park City, UT, from Washington Mutual Bank, Stockton, CA, re FISHER Closing |
| 12 | 04/09/2007 | Wire of $1,000,000 to Frontier Bank (Central Bank Provo, UT/Atlas Title Insurance Agency LLC to Park City Title - Down payment RON FISHER purchase.) |

12

| COUNT | DATE (On Or About) | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 13 | 04/10/2007 | Wire of $290,000 from Mountain America Credit Union (the account of Tyler Smith) to Frontier Bank (the account of Park City Title) on behalf of FISHER re "Fisher Project." |
| 14 | 04/10/2007 | Wire (email) from Tyler Smith [tsmith@ontimepower.com] (Registrar Godaddy.com in AZ) to Park City Title (Registrar enom.com in WA) re "Ron Fisher Project" |
| 15 | 04/23/2007 | Wire of $330,828.45 from Wells Fargo Bank, American Fork, UT to Washington Mutual Bank account of FISHER AVIATION SERVICES LLC/RON D. FISHER and D.F. (cash out/buyer refund.) |
| 16 | 06/12/2007 | Wire (email) from Chris Andrus [wallsandroofs@yahoo.com] to Ron Fisher [ronfisherb60@yahoo.com] re flight from Utah to Alaska via D&D Aviation. |
| 17 | 12/12/2007 | Wire (email) between Lafferty Aircraft and Bingham Family Alaska, carbon-copied to Ron Fisher, wiring instructions for $600,000 deposit for King Air aircraft. |

Each in violation of Title 18, United States Code, §§ 1343 (wire fraud), and 2(b) (causing).

## COUNT 18
### (Interstate Transportation of Persons in Execution or Concealment of Fraud)

23.    The allegations set forth in paragraphs 1 through 18 of this Indictment are incorporated by this reference as if fully set forth herein.

24.    On or about the dates set forth below, in the Central Division of Utah,

**RONALD D. FISHER,**

13

the defendant herein, transported or caused to be transported, and induced the individual set forth

below to travel in, interstate and foreign commerce in the execution or concealment of a scheme

or artifice to defraud that person or those persons of money or property having a value of $5,000

or more, and did aid and abet, counsel, command, induce, procure, and cause said interstate

travel or transportation, to-wit:

| COUNT | DATE (On Or About) | DESCRIPTION OF TRAVEL |
|---|---|---|
| 18 | 06/18/2007 through 06/24/2007 | C.A., travel from Utah to Alaska and return |

In violation of 18 U.S.C. § 2314 (Interstate Transportation of Persons in Furtherance of

Fraud) and 2(b) (causing).

## COUNTS 19 through 28
### (Serving as Airman Without Airman's Certificate)

25.     The allegations set forth in paragraphs 1through 18 of this Indictment are

incorporated by this reference as if fully set forth herein.

26.     On or about the dates set forth below, between and including March 2008 and

June of 2008, the exact dates being unknown to the Grand Jury, in the Central Division of the

District of Utah,

**RONALD D. FISHER,**

the defendant herein, did knowingly and willfully serve and attempt to serve as an airman, in the

14

capacity of pilot, when he did not have an airman's certificate authorizing him to serve in that

capacity, to wit:

| COUNT | DATE (On Or About) | PASSENGER and FLIGHT |
|---|---|---|
| 19 | Between 3/1/08 and 6/30/08 | G.B. - test flight out of Spanish Fork Airport, Spanish Fork, Utah. |
| 20 | 3/28/08 | D.B. - round trip Spanish Fork, UT, to San Jose, California. |
| 21 | 3/29/08 | D.B. - round trip Spanish Fork, UT, to Las Vegas, Nevada. |
| 22 | 3/31/08 | D.B. - round trip Spanish Fork, UT, to Las Vegas, Nevada. |
| 23 | 4/08/08 | D.B. , K.J. and R.M. - Spanish Fork/Provo, UT, to Helena, Montana. |
| 24 | 4/10/08 | D.B., K.J. and R.M. -  Spanish Fork/Provo, UT, return from Helena, Montana. |
| 25 | Between 3/1/08 and 6/30/08 | K.J., R.M., and D.F. - round trip to Hemet, California. |
| 26 | Between 3/1/08 and 6/30/08 | M.B. and another - to Bountiful, Utah. |
| 27 | Between 3/1/08 and 6/30/08 | M.B. and S.P. to Vernal, Utah. |
| 28 | 04/01/08 | R.B., B.B., M.B., D.B. - flight out of Spanish Fork Airport, Spanish Fork, Utah (lost an engine out of Spanish Fork.) |

Each in violation of 49 U.S.C. § 46306(b)(7).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE
### (18 U.S.C. Section 981(a)(7); 28 U.S.C. Section 2461)

As a result of committing the felony offenses alleged in Counts 1through 17 of the

Indictment, each of which is punishable by imprisonment for more than one year, defendant

RONALD D. FISHER shall forfeit to the United States pursuant to 18 U.S.C. Section 981(a)(7);

28 U.S.C. Section 2461 any and all property constituting or derived from any proceeds said

defendant and his coconspirators obtained directly or indirectly as a result of the said charges

alleged in Counts 1 through 17 listed in this Notice, and any property traceable thereto, including

but not limited to the following:

### PROCEEDS (MONEY JUDGMENT)

As to RONALD D. FISHER:  The approximate aggregate sum of Four Million Dollars

($4,000,000.00) in United States currency received and diverted by RONALD D. FISHER, in

connection with the above-referenced offenses.

### SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the

defendants,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

16

it is the intent of the United States, pursuant to 28 U.S.C. Section 2461(c) and 21 U.S.C. Section

853 (p), to seek forfeiture of any property of said defendants up to the value of the above-

forfeitable property.

A TRUE BILL:

/S/
_____
FOREPERSON OF THE GRAND JURY

CARLIE CHRISTENSEN
Acting United States Attorney

SCOTT J. THORLEY
Assistant United States Attorney

17